IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## CHRISTOPHER DEMOTTO LINSEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2015-CR-544  William R. Goodman, III, Judge**
_____

### No. M2020-01126-CCA-R3-PC
_____

The Petitioner, Christopher Demotto Linsey, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel was ineffective for failing to file a motion to suppress evidence obtained from his cell phone, failing to object to evidence presented at trial, and failing to file a timely motion for new trial.  Based on our review, we affirm the judgment of the post-conviction court denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR.  and ROBERT H. MONTGOMERY, JR., JJ., joined.

Daniel P. Ufford, Clarksville, Tennessee, for the appellant, Christopher Demotto Linsey.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Robert J. Nash, District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Defendant was convicted by a Montgomery County jury of possession of 0.5 grams or more of cocaine with the intent to sell or deliver, simple possession of marijuana, possession of drug paraphernalia, and resisting arrest.  He was sentenced by the trial court as a Range III, persistent offender to an effective term of twenty-three years in the Department of Correction.  In his direct appeal, the Petitioner challenged the sufficiency of the evidence in support of his cocaine conviction and argued that the trial court imposed

an excessive sentence. This court affirmed the convictions and sentence, and our supreme court denied his application for permission to appeal. State v. Christopher D. Linsey, No. M2017-00059-CCA-R3-CD, 2018 WL 557927, at *1 (Tenn. Crim. App. Jan. 24, 2018), perm. app. denied (Tenn. Mar. 14, 2018).

The investigative process that led to the Petitioner's arrest and subsequent convictions began on February 24, 2015, when Officer Jack Williams of the Clarksville Police Department, who was responding to a report of a possible trespasser in the back yard of one residence, smelled burnt marijuana and tracked the odor to the next-door residence. Id. at *1. Approximately two hours later, Officer Williams, accompanied by two other officers, approached the home for a "knock and talk" and spoke with the homeowner, Tiffany Holliday, who initially denied them entry but eventually relented and allowed them to enter and conduct a protective sweep of the home. Id. Once inside, where the odor was stronger, Officer Williams asked Ms. Holliday to have the occupants assemble in the living room, and the Petitioner and four other men came from a converted garage at the rear of the home. Id.

Officer Williams then contacted the Clarksville Police Department's on-call drug agent, Agent Robert DelGiorno, who obtained a search warrant for the residence and its occupants, which was executed shortly after midnight. Id. In the converted garage, officers found a small baggie of powder cocaine that had been stuffed down the cushions of a couch, a digital scale, a marijuana grinder, and "five or six marijuana 'roaches.'" Id. They found a second digital scale in a back bedroom. Id. Inside the front pocket of a jacket that the Petitioner had been wearing, they found multiple small plastic baggies that were consistent with the type used to package marijuana and cocaine. Id. at *2. They also recovered a cell phone from the jacket.

Because of the number of potential defendants, the officers decided to strip search the Petitioner and his companions at the home rather than waiting until they had transported them to jail. Id. After the Petitioner had removed his clothing at the direction of the officers, one of the drug agents saw a plastic baggie protruding from the Petitioner's clenched "'butt cheeks.'" Id. The Petitioner attempted to get away, and a brief struggle ensued. Id. After officers handcuffed the Petitioner, they found a small baggie containing 1.98 grams of crack cocaine on the floor in an area that had previously been searched. Id. A search warrant for the Petitioner's cell phone was subsequently obtained, and the forensic analysis uncovered several text messages indicating that the Petitioner was engaged in the sale of cocaine and marijuana. Id.

The jury rendered their guilty verdicts on November 24, 2015, and the trial court sentenced the Petitioner on December 17, 2015. No motion for new trial was filed. On November 23, 2016, trial counsel filed a motion to withdraw from representation, which

was granted on December 12, 2016. The Petitioner filed a pro se "Notice of Delayed Appeal" on January 17, 2017, in which he requested that this court waive the timely notice of appeal requirement and appoint counsel. We found that trial counsel failed to comply with Rule 37 (e)(1) of the Tennessee Rules of Criminal Procedure by not timely requesting to withdraw from representation, and waived the timely notice of appeal requirement in the interest of justice. Because the record reflected that the Petitioner had been declared indigent but had retained trial counsel, we remanded to the trial court for a determination of whether the Petitioner was indigent and should be appointed appellate counsel. On May 11, 2017, the trial court appointed appellate counsel, who filed the delayed direct appeal that challenged the sufficiency of the evidence and the sentences.

On November 8, 2018, the Petitioner filed a timely pro se petition for post-conviction relief. Following the appointment of post-conviction counsel, the Petitioner filed an amended petition in which he alleged that trial counsel was ineffective for, among other things, failing to plead crucial defense motions, failing to properly object to the admission of evidence at trial, and failing to preserve the Petitioner's appellate rights by not filing a timely motion for new trial.

At the July 15, 2020, evidentiary hearing, trial counsel testified that the instant case was the second of two, back-to-back cases in which she had represented the Petitioner on similar charges. Due to the passage of time and the similarity between the cases, she could not remember a lot of the details surrounding the instant case. She was unable to recall if she had been appointed or retained, and could not remember any questions about a video at the preliminary hearing. However, upon being shown a portion of the transcript, she acknowledged that there had been questions about a possible video recorded by one of the patrol officers. She could not recall if the video was ever produced.

Trial counsel testified that she filed a motion to suppress on the grounds that the search of the Petitioner's person was unconstitutionally intrusive and unlawful. She said the motion was denied following a hearing. She could not recall why she did not include in her motion a challenge to the validity of the search warrant itself. She also could not recall if she presented any evidence at the suppression hearing about the possible officer-recorded video.

When asked why she had not filed a motion to suppress the evidence obtained from the Petitioner's cell phone, she replied that she was not sure if the Petitioner ever mentioned that there was any evidence on his phone. She also "guess[ed] it was just a defense tactic[.]" She thought the search of the cellphone was probably included as part of the initial search warrant, but could not recall with certainty. She acknowledged that there was a lot of trial testimony about what had been found on the phone but said she did not believe the evidence on the phone was what led to the Petitioner's conviction.

Trial counsel could not remember any specific objections she raised at trial. She could not recall the State's motion to substitute photographs of some of the evidence instead of the physical evidence itself but indicated she would not have had a problem with that common practice.

Trial counsel recalled that the Petitioner had been in jail during the course of her representation. She could not remember how many times she visited him in jail but did recall that she spoke often with his wife, who relayed information to the Petitioner on her behalf. Trial counsel explained that the Petitioner's wife visited him frequently and that the most efficient method for counsel to communicate with him was through his wife. Trial counsel was certain, however, that she met at least a few times with the Petitioner for trial preparation, with each meeting lasting at least an hour, if not more.

Trial counsel testified that the Petitioner and his wife had hired her to handle the appeal for his first case and therefore knew that they had to make a payment for her to handle the appeal in the instant case, but they did not do so. In the meantime, on December 9, trial counsel received the devastating news that her mother had died. Trial counsel repeated that the Petitioner understood that he had to hire her if he wanted her to handle the appeal because the instant case was "his second rodeo." Because she was back home in Kansas and unavailable during that time, she had no idea if the Petitioner ever contacted her law office about the motion for new trial and appeal.

On cross-examination, trial counsel agreed that she based her motion to suppress on the issue that she thought had the best chance of success, which was the officers' unlawful detainment and strip search of the Petitioner in the home. In her opinion, the substantial amount of cocaine recovered during the strip search was the most damaging evidence against the Petitioner at trial.

Trial counsel could not recall any issue about a video, or that any videos were introduced at trial. She said the Petitioner did not ask her to investigate or call any witnesses at trial. She stated that she was unaware of any legal bases for a successful challenge to the search of the cell phone or the validity of the search warrant. On redirect examination, she acknowledged that the text messages on the Petitioner's phone implicated him in the sale of cocaine.

The Petitioner testified that trial counsel met with him only twice at the jail, for approximately an hour each time. He recalled asking trial counsel about the video, which Officer Williams had mentioned at the preliminary hearing. To his knowledge, trial counsel never requested that the video be produced or even talked about it again. The Petitioner did not think he ever specifically asked trial counsel to seek production of the

video. He believed, however, that the video could have been used to refute Officer Williams' trial testimony that the Petitioner had been wearing the jacket in which the plastic baggies and the cell phone were found.

The Petitioner testified that the search warrant for the phone was separate from the search warrant for the residence and its occupants. He said he and trial counsel did not discuss filing a motion to suppress the results of the search of the phone.

The Petitioner testified that officers provided inconsistent testimony about where the two digital scales had been found. He said he did not discuss that inconsistency with trial counsel, but he did ask her why she did not object to other things, and she responded that she wanted "everything to be on record for appeal purposes." He was unable to provide any specific examples of times that he had wanted her to object, suggesting that there were so many different occasions that he could not name one. He testified that trial counsel only raised one objection during the entire trial, but he could not remember what it was about.

The Petitioner testified that trial counsel never informed him of how much time he was potentially facing. He said he believed that trial counsel's failure to adequately communicate with him about the case prevented him from properly assisting in the defense. He stated that he knew that trial counsel failed to file a motion for new trial, but was unaware of the reason until her evidentiary hearing testimony.

On cross-examination, the Petitioner testified that, according to Officer Williams' preliminary hearing testimony, a patrol officer had made a video that showed the officer's approach and entry into the residence. He testified that he did not see the officer videotaping but was relying on what Officer Williams said about it at the preliminary hearing. He acknowledged that he had never seen the video and had no independent knowledge that it existed.

On July 21, 2020, the post-conviction court entered an order denying the petition. The court noted that trial counsel had filed and argued a motion to suppress the cocaine found on the Petitioner's person based on the allegedly unconstitutional search, but that the motion was denied. The court found that the Petitioner failed to show that counsel was deficient in her actions with respect to the motion to suppress, or that a different approach or argument would have resulted in the suppression of the evidence. The court further found that the Petitioner was unable to reference any specific evidence or testimony to which trial counsel failed to object that was outcome determinative in the case. With respect to trial counsel's failure to file a timely motion for new trial, the court, citing Howard v. State, 604 S.W.3d 53, 63-4 (Tenn. 2020), found that counsel was deficient in her performance, but that the Petitioner was unable to show that a full consideration of the waived issues on direct appeal would have changed the outcome of the case. On this latter

point, the court noted that the overwhelming evidence of the Petitioner's guilt included the large amount of cocaine he had concealed in his buttocks, his possession of the drug paraphernalia, and the text messages on his cell phone. On August 24, 2020, the Petitioner filed an untimely notice of appeal.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel provided ineffective assistance by failing to file a motion to suppress the "intent" evidence obtained from the cell phone, which deprived the Petitioner of the opportunity for either full acquittal of the charge or conviction of the lesser offense of simple possession; by failing to avail herself of multiple opportunities to object to the admission of evidence at trial, which "significantly changed the outcome of the case by allowing the State an easier presentation" of its proof against the Petitioner; and by failing to timely file a motion for new trial, which, combined with her ineffective assistance during the pretrial and trial phases of the case, "robbed [the Petitioner] of his basic rights in these criminal proceedings."

As a threshold issue, we must first address the Petitioner's untimely notice of appeal. The post-conviction court entered its order denying relief on July 21, 2020. "[T]he notice of appeal . . . shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4 (a). However, a notice of appeal is not jurisdictional, and this court may waive the timely notice of appeal requirement in the interest of justice. Id. "In determining whether waiver is appropriate, this [c]ourt will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005). Given the history of this case, and because the notice of appeal was filed only four days late, we have elected to waive the timely notice of appeal requirement.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides

a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). We apply the Strickland test to claims of ineffective assistance of trial counsel as well as ineffective assistance of appellate counsel. Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).

The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

We agree with the post-conviction court that the Petitioner failed to meet either the deficiency or the prejudice prong of his ineffective assistance of counsel claim with respect to counsel's failure to file a motion to suppress the cell phone search results and counsel's failure to object to the introduction of evidence at trial. Trial counsel's memory of the trial was hazy, but she was certain that she concentrated in her motion to suppress on the issues she thought had the best chance of success. She also said she was unaware of any basis for a successful challenge to the search of the cell phone. We note that the Petitioner has not identified a successful basis for a challenge to the cell phone search, either. Instead, the Petitioner merely speculates that, had trial counsel filed a motion to suppress the results of the cell phone search, the text messages that showed the Petitioner's intent to sell cocaine might have been suppressed.

The Petitioner, likewise, merely speculates that trial counsel may have been successful had she had raised objections at trial to the authentication of the photographs, authentication of the cell phone report, chain of custody of the evidence, and hearsay testimony by the witnesses, asserting that "[m]uch like her failure to address the issue of suppressing the cell phone, we cannot know the real outcome of the trial because trial counsel's deficient performance so drastically undermined it." The Petitioner does not identify any problems with hearsay testimony, the chain of custody, or authentication of the photographs or cell phone report, and our review of the trial record does not reveal any problems that counsel failed to address that would have altered the outcome of the case.

What the trial transcript does reveal is that trial counsel vigorously cross-examined the State's witnesses, attempting to cast doubt on the officers' claim that the cocaine found in the room originated from the Petitioner by, among other things, questioning their descriptions of the Petitioner's actions, the thoroughness of their earlier search of the room, and whether they had the plastic baggie tested for the presence of fecal material. The Petitioner has not met his burden of showing that trial counsel was deficient in her performance before or during the trial, or that any alleged deficiency prejudiced the outcome of his case.

While not unsympathetic to the reason for her failure to file a timely motion for new trial or to timely withdraw from representation, we also have no hesitation in agreeing with the post-conviction court that trial counsel was deficient in her performance for not filing a timely motion for new trial. Whether the Petitioner was prejudiced as a result is a closer question. As the post-conviction court observed, a claim of ineffective assistance of counsel based on counsel's failure to file a timely motion for new trial is analyzed under the Strickland standard, under which a petitioner must show actual prejudice as a result of counsel's deficient performance. See Howard, 604 S.W.3d at 63 (holding that when an ineffective assistance of counsel claim is based on counsel's deficient performance in

- 8 -

failing to file a timely motion for new trial, prejudice is not presumed but instead should be analyzed under the Strickland standard to determine if there is a reasonable probability that counsel's deficient performance changed the outcome of the case).

The post-conviction court concluded that the Petitioner was not prejudiced by counsel's failure to file a motion for new trial because the evidence in the case was overwhelming. However, because of trial counsel's failure to file a timely motion for new trial, the Petitioner was unable to raise as an issue on direct appeal the trial court's denial of his motion to suppress the results of the search of his person. See State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004) (citations omitted) ("If a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing.").

Thus, in order to determine if the Petitioner was prejudiced by his inability to raise the trial court's denial of his motion to suppress as an issue on direct appeal, we must review what occurred both at the suppression hearing and at trial. See State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998) (concluding that when reviewing the propriety of a trial court's decision to grant or deny a motion to suppress, an appellate court may properly consider not only evidence presented at the suppression hearing, but also evidence at trial).

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial court, and this court will not reverse the trial court's factual findings unless the evidence preponderates against them. Id. (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The evidence is to be viewed in the light most favorable to the prevailing party on a motion to suppress with all reasonable and legitimate inferences that may be drawn by the evidence. State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000). However, our review of the application of the law to the facts is de novo. State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998).

Trial counsel argued in her motion to suppress that the officers created the alleged exigent circumstances for their entry and protective sweep of the home by their warrantless entry into the private back yard of the residence to search for the origin of the marijuana odor.[1] The State responded that the odor of the marijuana was alone sufficient to establish probable cause for the search, and that the Petitioner lacked standing to complain about the officers' entry into the back yard because he was not the homeowner. Trial counsel conceded at the hearing that the Petitioner may have lacked standing with respect to the warrantless entry into the yard but argued that the Petitioner's constitutional rights were

---

[1] Although trial counsel's motion to suppress and the State's response is included in the record on direct appeal, the search warrant for the home and its occupants is not.

nonetheless violated by the officers' protective sweep and detainment of the home's occupants while they waited for a search warrant to be issued.

At the suppression hearing, Ms. Holiday testified that the officers approached her outside her home at about 8:00 p.m. and asked her several times for permission to conduct a search of her home, but she never consented. She said they also asked her for permission to conduct a protective sweep of the home. She stated that when she told the officers that she did not want them to conduct a protective sweep, they told her that she had no choice under the law and that they did not need her consent. She testified that, once inside, the officers told her to have everyone come into the living room. She said the officers patted everyone down, finding no weapons, and then told her that they were going to "put the house on freeze" while they obtained a warrant. She estimated that she and her adult companions were detained, with officers present the entire time, for approximately four or five hours until the search warrant was issued.

At the conclusion of the hearing, the trial court found that there was no evidence that the Petitioner was not free to leave the residence during that time. The court, therefore, denied the motion to suppress.

At trial, however, both Officer Williams and Agent DelGiorno testified that the home's occupants were not free to leave during the time a search warrant was obtained. Officer Williams testified that he first asked Ms. Holiday for consent to search her residence, but she refused. He said he asked if he could come inside to talk to her, but she offered to bring everyone outside. He said that the temperature was below freezing, that he asked her again if he could come inside to talk so that she would not have to bring her children outside into the cold, and that she consented. On cross-examination, he testified that while he was still outside with her, he explained that he needed to conduct a protective sweep of the home and that Ms. Holiday consented after he told her that a protective sweep was not a search, but a check to see who was inside the residence.

Officer Williams testified that he had Ms. Holiday assemble the adults in the living room, and then called Agent DelGiorno to explain the situation. Agent DelGiorno called him back a short time later to tell him he was in the process of obtaining a search warrant. Officer Williams estimated that he first approached Ms. Holiday outside the home at approximately 9:00 p.m., and said that the search warrant was executed shortly after midnight. He denied that anyone was searched or patted down until after the search warrant was obtained, but agreed that no one was allowed to leave and that their movements inside were restricted. He recalled that one individual was allowed to use the restroom, but that he was accompanied by a police officer.

For his part, Agent DelGiorno testified that the home was placed on freeze, with no one allowed to enter or leave, while he obtained a search warrant.

Both the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. "The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (quoting Camara v. Municipal Ct., 387 U.S. 523, 528 (1967)). As such, a warrantless search or seizure is presumed unreasonable under both the federal and state constitutions. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55, (1971) and State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992)). "Therefore, when a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the State bears the burden of proving that its warrantless actions were justified, *i.e.*, as a lawful investigatory stop or under some other exception to the warrant requirement." State v. Nicholson, 188 S.W.3d 649, 656-57 (Tenn. 2006). Among the exceptions to the warrant requirement are exigent circumstances, or "'those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant.'" State v. Hutchison, 482 S.W.3d 893, 916 (Tenn. 2016) (quoting State v. Meeks, 262 S.W.3d 710, 723 (Tenn. 2008)). Our courts have held that exigent circumstances include "when immediate police action is necessary to prevent the destruction of evidence[.]" Id.

Based on the unequivocal testimony of Officer Williams and Agent DelGiorno, there is no question that the Petitioner was seized for fourth amendment purposes during the time he was detained before the officers returned with the search warrant. See State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (observing that a seizure for fourth amendment purposes occurs when an officer, either by physical force or show of authority, restrains the liberty of a citizen) (citations omitted). Viewed in the light most favorable to the State, the Petitioner and his companions were detained for approximately three hours before Agent DelGiorno arrived with the search warrant. The question now becomes whether the approximate three-hour detainment of the Petitioner at the home was reasonable under the circumstances.

"Reasonableness is the 'touchstone of the Fourth Amendment.'" State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). In Illinois v. McArthur, 531 U.S. 326 (2001), the United States Supreme Court found reasonable a two-hour detention of a defendant on the front porch of his home while officers obtained a search warrant for his residence based on his wife's report that he had "dope" hidden in the residence. Id. at 329. The Court balanced the "privacy-related and law enforcement-related concerns to determine if the intrusion" caused by the two-hour

- 11 -

detainment of the defendant was reasonable. Id. at 331. In concluding that it was, the Court observed that the police had probable cause to believe that the defendant's home contained evidence of a crime and unlawful drugs, had good reason to fear that the defendant would destroy the drugs before they could return with a warrant, "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy[,]" and imposed the restraint for "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant." Id. at 331-3.

In this case, the officers had probable cause for a search warrant at the time they detained the Petitioner and the other adult occupants of the home in the living room. "The odor of an illegal substance alone can provide sufficient probable cause for the issuance of a search warrant." State v. Torsaunt Lamont Shanklin, No. M2019-01896-CCA-R3-CD, 2021 WL 1082043, at *9 (Tenn. Crim. App. Mar. 22, 2021), perm. app. denied (Tenn. May 12, 2021) (citations omitted). They also had a reasonable basis to believe that evidence would be destroyed if the home's occupants were not detained, made reasonable efforts under the weather-related circumstances to balance the privacy and comfort interests of the home's occupants with their law enforcement concerns by holding the occupants in the living room while they waited for the search warrant, and acted with due diligence in obtaining the warrant as expeditiously as possible. Under these circumstances, we conclude that the Petitioner has not met his burden of showing that the outcome of his trial would have been different had he been able to raise the denial of his motion to suppress as an issue in his direct appeal. Accordingly, we affirm the judgment of the post-conviction court denying the petition.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

- 12 -